IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CR-52-D
No. 5:25-CV-619-D

| | | |
|---|---|---|
| MICHAEL KENROY BELL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

On September 29, 2025, Michael Kenroy Bell ("Bell" or "defendant") moved pro se under 28 U.S.C. § 2255 to vacate, set aside, or correct his conviction for conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine and a quantity of cocaine base (crack) and his 204-month sentence [D.E. 123] and filed a supporting memorandum [D.E. 124]. On December 15, 2025, the United States moved to dismiss Bell's section 2255 motion [D.E. 133] and filed a supporting memorandum [D.E. 134]. On February 17, 2026, Bell responded in opposition [D.E. 138]. As explained below, the court grants the United States' motion to dismiss, dismisses Bell's section 2255 motion, and denies a certificate of appealability.

I.

On August 17, 2023, with a written plea agreement, Bell pleaded guilty to conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine and a quantity of cocaine base (crack) ("count one"). See [D.E. 58, 59]; Rule 11 Transcript ("Rule 11 Tr.") [D.E. 95] 5–17; Sentencing Transcript ("Sent. Tr.") [D.E. 96]. At the Rule 11 hearing, Bell and the court engaged in a comprehensive Rule 11 colloquy. See Rule 11 Tr. 4–18. The court confirmed Bell's

competency and that he negotiated a plea agreement with the United States. See id. at 4. The court also confirmed that Bell was "fully satisfied with [his counsel's] legal services." Id. at 5. The court explained to Bell his trial rights, which Bell acknowledged. See id. at 5–6. The court then summarized count one and discussed the potential penalties. See id. at 6–7. Bell confirmed that he understood the charge and penalties. See id. at 6–7.

The court discussed the sentencing process. See id. at 8–9. The court explained that at the sentencing hearing it would resolve any objections to the Presentence Investigation Report ("PSR") and calculate an advisory guideline range. See id. at 8. The court would then consider any motion affecting that advisory guideline range. See id. The court would then consider the defense counsel's arguments, Bell's allocution, and the United States' arguments. See id.

The court discussed any estimated advisory guideline ranges or estimated sentences that Bell may have received from his counsel or anyone else before pleading guilty. Id. at 8–9. The court advised Bell that "even if [his] lawyer has given [him] his best estimate of what he thinks the advisory guideline range will be, whether he thinks there will be a departure or variance motion, whether he thinks [the court will] grant or deny such a motion, or any prediction from [his] lawyer or anyone else on any sentencing topic, including [his] actual sentence, any prediction from anyone on any sentencing topic is not binding on the [c]ourt." Id. at 8. Bell confirmed that he understood these facts. See id. Bell also confirmed his understanding that an "incorrect prediction would not provide a basis . . . to withdraw [his] guilty plea." Id. at 9.

The court reviewed the plea agreement with Bell and confirmed that he was not threatened or forced to plead guilty, no one promised him anything if he pleaded guilty, he discussed the plea agreement with his lawyer before signing it, he understood the plea agreement, and that the plea agreement contained the entire agreement between the parties. See id. at 9–10. The court then

reviewed the plea agreement's waiver of certain appellate and post-conviction rights. See id. at 10–11. Bell confirmed that he understood that the plea agreement waived his right to appeal or contest his conviction or sentence, "including any proceeding under 28 U.S.C. section 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the defendant at the time of the defendant's guilty plea." Id. at 10.

The court read the charge in count one to Bell, and Bell pleaded guilty to count one. See id. at 13–14. The United States offered a factual basis for the guilty plea. See id. at 14–16. The court accepted Bell's guilty plea and adjudged him guilty of committing the crime charged in count one. See id. at 16–17.

On October 6, 2023, probation filed the draft PSR. See [D.E. 64]. On October 20, 2023, Bell objected to the draft PSR's "adjustment for [a leadership] role in the offense." [D.E. 67] 2. Bell also objected to the "the consideration of an upward departure" under U.S.S.G. § 4A1.3. Id. "The final Presentence Report rejected [Bell's] objection" to the three-level enhancement. [D.E. 73] 2; see PSR [D.E. 70] ¶ 62.

On November 8, 2023, Bell moved for a variance below the advisory guideline range. See [D.E. 74] 1. On the same day, Bell filed a sentencing memorandum that "request[ed] that the [c]ourt allow [Bell's] objection to the leadership role enhancement." [D.E. 73] 4. On November 13, 2023, the United States moved for an upward departure under U.S.S.G. § 4A1.3. See [D.E. 76].

On November 15, 2023, the court held Bell's sentencing hearing. See Sent. Tr. 1; [D.E. 77] 1. The court confirmed that Bell was competent and had discussed the PSR with counsel. See

id. at 2–5. The court discussed Bell's objection to the three-level adjustment with Bell's counsel. See id. at 6–17. The United States called a Raleigh police officer and FBI task force agent as a witness in support of the three-level enhancement. See id. at 10–14. Bell's counsel cross-examined the officer. See id. at 14. After listening to both parties' arguments, the court overruled Bell's objection to the three-level enhancement and explained its findings. See id. at 15–17.

The court discussed the United States' upward departure motion. See id. at 17–25. The United States argued why it thought an upward departure under U.S.S.G. § 4A1.3 was appropriate. See id. at 17–19. Bell's counsel argued against the upward departure. See id. at 19–25. After listening to the arguments, the court granted the United States' motion for an upward departure and calculated Bell's advisory guideline range to be 168 to 210 months' imprisonment. See [D.E. 77] 1; Sent. Tr. 30.

The court then heard arguments about the section 3553(a) factors from the United States and Bell. See Sent. Tr. 30–33, 35–37. The court also heard Bell allocute. See id. at 33–35. During his allocution, Bell referenced a problem with his counsel. See id. at 33. On June 26, 2023, Bell had sent a letter informing the court that he was "uncomfortable with [his] attorney . . . [because his attorney] ke[pt] allowing the courts to continue [his] case, and . . . only inform[ing] [him] after the fact." [D.E. 46] 1. But during his allocution, Bell explained that the "[p]roblem with the lawyer . . . was fixed. [He] was good with him" since sending the letter. Sent. Tr. 33. After considering all relevant factors under section 3553(a), the arguments of counsel, and Bell's allocution, the court sentenced Bell to 204 months' imprisonment. See id. at 38–42; [D.E. 84].

On November 22, 2023, Bell appealed. See [D.E. 78] 1; [D.E. 79] 1. Bell argued that this court erred in (1) overruling his objection to the three-level leadership enhancement and (2) upwardly departing under U.S.S.G. § 4A1.3. See [D.E. 123] 2. On July 25, 2024, the United

States Court of Appeals for the Fourth Circuit dismissed Bell's appeal because "Bell knowingly and voluntarily waived his right to appeal." [D.E. 111] 1–2.

On September 29, 2025, Bell moved pro se under section 2255 to vacate, set aside, or correct his conviction and sentence. See [D.E. 123]. Bell argues that his counsel rendered ineffective assistance of counsel by failing to (1) seek a mental health evaluation of Bell, (2) communicate with Bell and inform him of the guilty plea's consequences, (3) conduct an adequate pretrial investigation, (4) anticipate that Bell could not plead guilty voluntarily and knowingly, (5) negotiate a more favorable plea agreement, (6) adequately challenge the leadership role enhancement, and (7) adequately challenge the upward departure. See [D.E. 124] 2–3. Liberally construed, Bell also argues that his guilty plea was not knowing and voluntary. See id. at 3.

On December 15, 2025, the United States moved to dismiss Bell's section 2255 motion. See [D.E. 133]. On February 17, 2026, Bell responded in opposition. See [D.E. 138].

II.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests a petition's legal and factual sufficiency. Fed. R. Civ. P. 12(b)(6); see Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007). In considering a motion to dismiss, a court need not accept a petition's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (citation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take

judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

In reviewing a section 2255 petition, the court is not limited to the petition itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013); United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

The "Sixth Amendment entitles criminal defendants to the effective assistance of counsel—that is, representation that does not fall below an objective standard of reasonableness in light of prevailing professional norms." Bobby v. Van Hook, 558 U.S. 4, 7 (2009) (per curiam) (cleaned up). The Sixth Amendment right to counsel extends to all critical stages of a criminal proceeding, including plea negotiations, trial, sentencing, and appeal. See, e.g., Lee v. United States, 582 U.S. 357, 363–65 (2017); Lafler v. Cooper, 566 U.S. 156, 164–65 (2012); Missouri v. Frye, 566 U.S. 134, 140 (2012); Glover v. United States, 531 U.S. 198, 203–04 (2001); Hill v. Lockhart, 474 U.S. 52, 57–60 (1985).

To state a claim of ineffective assistance of counsel in violation of the Sixth Amendment, Bell must plausibly allege that his attorney's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687–91 (1984). When determining whether counsel's representation was objectively unreasonable, a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight." Id. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance." Id. As for performance, a party must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed [to] the defendant by the Sixth Amendment." Id. at 687.

"Surmounting Strickland's high bar is never an easy task." Harrington v. Richter, 562 U.S. 86, 105 (2011) (citation omitted). "An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." Id. (cleaned up). The "standard for judging counsel's representation is a most deferential one." Id. "Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." Id. "It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Id. (cleaned up).

A person asserting an ineffective assistance of counsel claim also must show that counsel's deficient performance was prejudicial. See Strickland, 466 U.S. at 691–96. A person does so by showing that there is a "reasonable probability that, but for" the deficient performance, "the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Supreme Court based this "additional 'prejudice' requirement" on the "conclusion that 'an error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'" Hill, 474 U.S. at 57 (quoting Strickland, 466 U.S. at 691).

In assessing prejudice, Strickland "asks whether it is 'reasonably likely' the result would have been different." Harrington, 562 U.S. at 111 (quoting Strickland, 466 U.S. at 696). Strickland "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between Strickland's prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" Harrington, 562 U.S. at 111–12 (quoting Strickland, 466 U.S. at 693, 697). "The likelihood of a different result must be substantial, not just conceivable." Id. at 112 (citation omitted).

When a defendant pleads guilty and later attacks his guilty plea, "to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59 (quotations omitted); see Lee, 582 U.S. at 364–65. "[S]uch an individual 'must convince the court' that such a decision 'would have been rational under the circumstances.'" United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). "Surmounting Strickland's high bar is never an easy task, and the strong societal interest in finality has special force with respect to convictions based on guilty pleas." Lee, 582 U.S. at 368–69 (cleaned up). "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." Id. at 369. "Judges instead should look to the contemporaneous evidence to substantiate a defendant's expresses preferences." Id.

"Requiring a showing of prejudice from defendants who seek to challenge the validity of their guilty pleas on the ground of ineffective assistance of counsel [serves] the fundamental interest in the finality of guilty pleas . . . ." Hill, 474 U.S. at 58 (quotations omitted). "Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by

increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice." Id. (citation omitted). "The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas." Id. (citation omitted).

"[I]f a defendant alleges that he has accepted a government plea offer based on the erroneous advice of counsel, but entered that plea only after the misadvice was corrected by the trial court at the Rule 11 hearing, then he will not be able to show the necessary causal link between counsel's error and his decision to plead guilty." United States v. Mayhew, 995 F.3d 171, 179–80 (4th Cir. 2021) (cleaned up); see United States v. Yelizarov, 140 F.4th 597, 604–05 (4th Cir. 2025), cert. denied, 146 S. Ct. 345 (2025); United States v. Akande, 956 F.3d 257, 262–63 (4th Cir. 2020); United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995). "Generally, a court should dismiss a claim in a [section] 2255 motion that contradicts a petitioner's sworn statements made during a Rule 11 plea colloquy." Yelizarov, 140 F.4th at 605; see United States v. Lemaster, 403 F.3d 216, 219–22 (4th Cir. 2005).

III.

A.

Bell alleges deficient performance because his counsel did not pursue "a mental health evaluation/examination" that "would have shown that [Bell] was functionally mental[ly] incompetent . . . and could not . . . [have] the specific intent to further the purposes of the conspiracy." [D.E. 124] 3–4. By itself, not requesting a mental health evaluation is not ineffective assistance of counsel. See, e.g., Massey v. United States, No. 5:10-CR-166, 2015 WL 1800573, at *3 (E.D.N.C. Apr. 16, 2015) (unpublished); Keith v. United States, No. 1:11-CR-107, 2014 WL

2159022, at *4 (W.D.N.C. May 23, 2014) (unpublished); Frye v. United States, No. 2:09-CR-291, 2012 WL 5549020, at *3–4 (D.S.C. Nov. 15, 2012) (unpublished). The court confirmed Bell's competency before accepting his guilty plea and before sentencing him. See Rule 11 Tr. 3–4, 17; Sent. Tr. 2–5. Bell provides only conclusory statements that he was mentally incompetent. See [D.E. 124] 3–4 (claiming a mental health disorder without explaining the diagnosis). Thus, Bell does not plausibly allege deficient performance or prejudice. See Strickland, 466 U.S. at 687–96.

B.

Bell alleges deficient performance because his counsel failed to tell Bell about the guilty plea's consequences. See [D.E. 124] 5. Bell argues that "[t]here was not any reasonable communication from the beginning of this case between [Bell] and his counsel." Id.

During Bell's Rule 11 hearing, Bell testified that he was "fully satisfied" with his counsel's services. Rule 11 Tr. 5. Furthermore, at his Rule 11 hearing, Bell told the court that he discussed the entire plea agreement with his lawyer. See id. at 9. In any event, even if Bell's counsel did not tell him about the guilty plea's consequences, the court advised Bell during the Rule 11 hearing of his guilty plea's consequences. See id. at 5–14. Under oath, Bell swore that he understood the consequences. See id.

Bell's sworn statements at his Rule 11 hearing bind him. See, e.g., Blackledge, 431 U.S. at 74–75; United States v. Moussaoui, 591 F.3d 263, 295–99 (4th Cir. 2010); Lemaster, 403 F.3d at 221–23. Those statements defeat his claim. See, e.g., Lee, 582 U.S. at 363–65; Padilla, 559 U.S. at 372; Hill, 474 U.S. at 57–60; Fugit, 703 F.3d at 260. Thus, the claim fails. See Strickland, 466 U.S. at 689–96.

C.

Bell alleges deficient performance because his counsel failed to conduct "a reasonable independent pretrial investigation of his case." [D.E. 124] 7. "[A]lthough counsel should conduct a reasonable investigation into potential defenses, Strickland does not impose a constitutional requirement that counsel uncover every scrap of evidence that could conceivably help their client." Dyess, 730 F.3d at 362; see Green v. French, 143 F.3d 865, 892 (4th Cir. 1998), overruled on other grounds by Williams v. Taylor, 529 U.S. 362 (2000). Moreover, to plausibly allege a claim that counsel failed to conduct an adequate pretrial investigation, Bell must identify what an adequate investigation would have revealed. See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996).

Bell fails to plausibly allege how his counsel's pretrial investigation was deficient. Furthermore, Bell fails to plausibly allege what an adequate and independent pretrial investigation would have revealed. See [D.E. 124] 7; Beaver, 93 F.3d at 1195. Thus, Bell has not plausibly alleged deficient performance. See Strickland, 466 U.S. at 687–91.

Alternatively, Bell fails to plausibly allege prejudice. Bell's assertion that, if there was an adequate investigation, there would have been "a reasonable probability that the results of the whole proceeding would have been different" is conclusory. See [D.E. 124] 7; Dyess, 730 F.3d at 359–60. Thus, Bell's claim fails. See Strickland, 466 U.S. at 687–97.

D.

Bell alleges deficient performance because "counsel should have anticipated that the petitioner could not enter[] a plea voluntarily and intelligent[ly]." [D.E. 124] 8. At Bell's Rule 11 hearing, the court found Bell "competent and capable of entering an informed plea" and that his


Case 5:23-cr-00052-D-KS Document 140 Filed 09/21/26 Page 11 of 16

guilty plea was "knowing and voluntary." Rule 11 Tr. 17. The court also found that Bell's plea was knowing and voluntary after a lengthy discussion with Bell. See id. at 6–14, 16–17.

Bell's sworn statements conclusively establish that he knowingly and voluntarily pleaded guilty. See Blackledge, 431 U.S. at 74–75; Yelizarov, 140 F.4th at 604–05; Moussaoui, 591 F.3d at 295–99; Lemaster, 403 F.3d at 222. Thus, Bell has not plausibly alleged deficient performance. See Strickland, 466 U.S. at 687–91.

Alternatively, Bell has failed to plausibly allege prejudice. Again, Bell only makes the conclusory statement that the results would have been different absent deficient performance. See [D.E. 124] 8; Dyess, 730 F.3d at 359–60. Thus, Bell's claim fails. See Strickland, 466 U.S. at 687–96.

E.

Construed liberally, Bell contends that his guilty plea was not knowing and voluntary. See [D.E. 124] 8. A criminal defendant's decision to plead guilty must be knowing and voluntary. See, e.g., Boykin v. Alabama, 395 U.S. 238, 242–43 (1969); McCarthy v. United States, 394 U.S. 459, 466 (1969); Walton v. Angelone, 321 F.3d 442, 462–63 (4th Cir. 2003).

Bell procedurally defaulted the claim that his guilty plea was not knowing and voluntary. See [D.E. 123] 2; [D.E. 111]; Opening Br., United States v. Bell, No. 23-4754 (4th Cir. Apr. 17, 2024) [D.E. 14]. In his appeal, Bell only argued that the court erred in denying Bell's three-level role enhancement objection and in granting an upward departure. See Opening Br., United States v. Bell, No. 23-4754 (4th Cir. Apr. 17, 2024); [D.E. 123] 2. Section 2255 "imposes tight procedural constraints" on the scope of a movant's claims. Fernandez v. United States, 146 S. Ct. 1292, 1300 (2026). "[C]laims not raised on direct review are procedurally defaulted unless the

prisoner can demonstrate cause and prejudice, or else actual innocence." Id. (cleaned up); see Massaro v. United States, 538 U.S. 500, 504 (2003); Bousley v. United States, 523 U.S. 614, 621 (1998); Fugit, 703 F.3d at 253; United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). Bell did not raise the claim that his guilty plea was not knowing and voluntary on direct appeal, and he has not plausibly alleged cause and prejudice or actual innocence to excuse this failure. Thus, Bell's claim fails.

F.

Bell alleges deficient performance because his counsel failed "to negotiate/pursue a more favorable plea agreement." [D.E. 124] 9–10. Bell's counsel, however, acted reasonably by negotiating a plea agreement in which Bell agreed to plead guilty to one count in exchange for the United States recommending that various sentencing enhancements did not apply and that Bell should receive a downward adjustment for acceptance of responsibility. See [D.E. 59] ¶¶ 5a–d. Without the plea agreement, the PSR estimated that Bell's sentencing guideline would have almost doubled. See PSR ¶ 71.

Bell identifies more favorable plea deals he would have accepted. See [D.E. 124] 10. But Bell has alleged nothing specific his counsel could have done to obtain these more favorable plea deals. See Williams v. United States, No. 5:13-CR-164, 2015 WL 8207604, at *3, (E.D.N.C. Dec. 7, 2015) (unpublished). "'Try harder' or 'do more' is not a Strickland theory." United States v. Flood, — F.4th —, —, 2026 WL 2342536, at *6 (4th Cir. 2026). Bell has failed to plausibly allege deficient performance. See, e.g., Strickland, 466 U.S. at 687–96; Flood, 2026 WL 2342536, at *6–9.

Alternatively, Bell has failed to plausibly allege prejudice. Bell argues that he would have received a lesser sentence with a more favorable plea agreement. See [D.E. 124] 10. Prejudice in the plea-bargaining context requires the defendant to show that but-for counsel's allegedly deficient performance, "there is a reasonable probability that the plea offer would have been presented to the court, . . . that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Lafler, 566 U.S. at 164; see Flood, 2026 WL 2342536, at *5. Bell does not plausibly allege that "the government was willing to make" a more favorable plea deal. Flood, 2026 WL 2342536, at *8. Bell also does not plausibly allege that the court would have accepted a more favorable plea deal. See id. at *5. Thus, Bell has failed to plausibly allege prejudice. See, e.g., Strickland, 466 U.S. at 687–96; Flood, 2026 WL 2342536, at *7–8.

G.

Bell alleges that his counsel performed deficiently in failing "to adequately challenge the imposition of a three-level aggravating role enhancement" at his sentencing hearing. [D.E. 124] 11. Specifically, Bell alleges that his counsel failed to investigate evidence "which would have undermined the Government's portrayal of [Bell] as someone capable of managing" others. Id. Bell also alleges deficient performance because his counsel "failed to adequately object to . . . the district court's . . . upward [departure]." Id. at 13. Specifically, Bell alleges that the court increased his criminal history category from two to six, and his attorney "failed to (1) correct the government's mischaracterizations of [Bell's] criminal history . . . (2) invoke controlling precedent prohibiting such an unreasoned leap between categories, or (3) present mitigating" evidence. Id.

Bell cannot use section 2255 to attack his advisory guideline range retroactively. See, e.g., United States v. Foote, 784 F.3d 931, 935–36 (4th Cir. 2015); United States v. Pregent, 190 F.3d

279, 283–84 (4th Cir. 1999). Thus, to the extent Bell seeks to attack his advisory guideline range retroactively, the claim fails.

Alternatively, on direct appeal, Bell attacked the court's decision on the leadership enhancement and the upward departure, and the Fourth Circuit dismissed his appeal. See Opening Br., United States v. Bell, No. 23-4754 (4th Cir. Apr. 17, 2024); [D.E. 123] 2; [D.E. 111]. Bell cannot use section 2255 to relitigate a claim that he lost on direct appeal. See Fernandez v. United States, 146 S. Ct. 1292, 1300 (2026); Bousley v. United States, 523 U.S. 614, 621 (1998); Dyess, 730 F.3d at 360; United States v. Linder, 552 F.3d 391, 396 (4th Cir. 2009); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (per curiam). Thus, the claim fails.

H.

Bell alleges ineffective assistance of counsel because of his counsel's cumulative errors. See [D.E. 124] 15. "[C]umulative-error analysis evaluates only the effect of matters actually determined to be constitutional error, not the cumulative effect of all of counsel's actions deemed deficient." Fisher v. Angelone, 163 F.3d 835, 852 n.9 (4th Cir. 1998) (emphasis added); see Basden v. Lee, 290 F.3d 602, 619 (4th Cir. 2002). Therefore, the court cannot cumulatively assess the actions of Bell's counsel that are not individually unconstitutional to create a constitutional violation. See Fisher, 163 F.3d at 852 n.9. Because Bell has not shown deficient performance or prejudice individually for any of his claims, he cannot establish cumulative error based on any of his claims. Thus, Bell's cumulative error claim fails.

Bell also asks the court to hold an evidentiary hearing. See [D.E. 124] 17. Section 2255 requires the court to "grant a prompt hearing" "unless the motion and the files and records of the case conclusively show that a prisoner is entitled to no relief." 28 U.S.C. § 2255(b); see Flood,

2026 WL 2342536, at *2–3; United States v. Hashimi, 110 F.4th 621, 627 (4th Cir. 2024). After reviewing the motion and files and records in the case, the court finds that the record conclusively shows that Bell is not entitled to relief. See Flood, 2026 WL 2342536, at *2–3. Thus, the court denies Bell's request for an evidentiary hearing.

The court finds that reasonable jurists would not find the court's treatment of Bell's claims debatable or wrong and that the claims do not deserve encouragement to proceed any further. Thus, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000).

IV.

In sum, the court GRANTS respondent's motion to dismiss [D.E. 133], DISMISSES petitioner's section 2255 motion [D.E. 123], and DENIES a certificate of appealability.

SO ORDERED. This 21 day of September, 2026.

JAMES C. DEVER III
United States District Judge